CASE 58—PETITION EQUITY—NOVEMBER 30.

```
| 98   349|
|ө107 409|
```

# Tichenor v. Brewer's Executor.

APPEAL FROM NELSON CIRCUIT COURT.

1. CONSTRUCTION OF DEVISE—WORD "DESCENDANTS" DEFINED.—Under a devise to one for life and then to his "descendants," if any, in fee, but if none, then to other persons named, collateral kindred do not take as remaindermen, the word "descendants" not being used in the sense of heirs at law.
2. SAME—CHARITABLE USES.—A devise to the "Roman Catholic Bishop of the city of Louisville to be by him used for the benefit of the Roman Catholic charitable institutions in his diocese" designates with sufficient certainty as the trustee the corporation designated by its charter as "The Rt. Rev. Wm. George McCloskey, Roman Catholic Bishop of Louisville," and the devise is also sufficiently certain as to the beneficiaries.

E. E. McKAY FOR APPELLANT.

No brief filed.

P. B. & UPTON W. MUIR FOR APPELLEE.

1. The word "descendants" does not embrace collateral relations. (Rapalje & Lawrence's Law Dictionary; 30 N. Y., 393; Stormouth's English Dictionary; Bouvier's Law Dictionary.)
2. The fact that the Roman Catholic Bishop is not designated by his corporate name does not invalidate the devise to him. (Cromie's Heirs v. Louisville Orphans' Home Society, 3 Bush, 365.)
3. The devise to the Bishop is not void for uncertainty. (Kinney v. Kinney's Ex'or, 86 Ky., 611; Attorney-General v. Wallace, 7 B. Mon., 612; Ford v. Ford's Ex'or, 91 Ky., 573; Givens v. Shouse, 5 5 Ky. L. R.; Howe v. Wilson, 91 Mo., 48.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

The questions presented by this appeal arise upon this clause of the will of Mrs. Lucy Brewer who, in 1888, died intestate, domiciled in Nelson county, Ky., where her will was duly probated in 1889, after her death: "All the re-

mainder of my estate, of every kind whatsoever, I give to Wm. Johnson in trust, and the income or profits of the same, or so much thereof as he may think proper, to be applied to the support and maintenance of Frederick Brewer and any family he may have during his natural life, and at his death then to his descendants, if any, in fee, according to the laws of descent and distribution; but if he should die without descendants living at the time of his death, then the property mentioned in this clause is to go to the Roman Catholic Bishop of the city of Louisville, and to be by him used for the benefit of the Roman Catholic charitable institutions in his diocese. Said trustee may permit said Frederick to have possession of all said property, but subject to the control of said trustee for the purpose aforesaid."

It is alleged in the petition that plaintiff, Betty Tichenor, was a niece of Lucy Brewer, and that she is the mother of Frederick Brewer, the devisee mentioned; that the two infant plaintiffs are the half brother and half sister of Frederick Brewer, being born of the same mother by her second marriage; that said Frederick Brewer is dead, having never been married, and, of course, leaving no descendants, no issue of his body that could lawfully take under the will after his death. But plaintiffs allege that she (being the mother of Frederick Brewer) and her two infant children, born to her by a subsequent marriage, being the brother and sister of the half blood, are entitled to inherit this property under the law of descent and distribution, and that this property passes to them as the descendants and heirs at law of said Frederick Brewer, deceased.

The property claimed is a small amount of personalty, and a tract of land of 84 acres in Nelson county.

Plaintiffs confuse their claim as descendants and heirs at

law.   While it may be that the same persons are often both the descendants and heirs at law of an ancestor, yet it by no means follows that the terms *descendants* and *heirs at law mean always* one and the same person.

In this case, where the whole estate of Lucy Brewer passed by her last will and testament, of course nothing, strictly speaking, could have descended in any event to any heir at law of her.   And, as to Frederick Brewer, he had only a *life estate* in any event, so that no part of this property devised to him *for life* by Mrs. Lucy Brewer could pass from him under the laws of descent to his heirs at law.   His estate in this land being for life only, there was no inheritable estate in him.   We must, therefore, look to the will of the testatrix, Mrs. Brewer, to see what distribution she made of the remainder interest in this part of her estate.

By that will, as quoted, we see that this property is given through a trustee to Frederick Brewer for and during his natural life, and then to his descendants, if any, in fee, etc. And then the will proceeds to say:  "But if he dies without leaving descendants living at the time of his death, then to go to the Roman Catholic Bishop of the City of Louisville," etc.   So that it is quite clear that in this case "descendants" is used in quite a distinct sense from "heirs at law."   And while the mother and the brother and sister of the half blood would (the father being dead) take by descent as heirs at law of Frederick Brewer any inheritable estate that he might have owned at his death, yet they can not, by any latitude of construction of this will, be deemed the descendants of Frederick Brewer, to whom this property is first limited after his death.   So far from Betty Tichenor being the descendant of Frederick Brewer, she is his mother and he is her descendant.     To say otherwise is to utterly ignore

the meaning of the word *descendant* as defined by the best authors.

Mr. Webster says *descendant* means "one who descends, as offspring, however remotely; correlative to ancestor or ascendant."

Mr. Stormouth: "Any one proceeding from an ancestor; offspring."

Rapalje & Lawrence (Law Dictionary) say: "'Descendant' means issue of the body of the person named of every degree." Again they say "it does not mean collateral relations."

Mr. Bouvier says "descendant" means "those who have issued from an individual, including his children, grandchildren, and their children to the remotest generation."

So that it can not possibly be that testator meant by the term "descendant of Frederick Brewer" that this property should, on his death, go to his mother and his brother and sister of the half blood, though they may have been his heirs at law, but she meant, as she says, that on his death, without descendants living at the time of his death, it should then go to the Roman Catholic Bishop of the city of Louisville. This we deem a sufficient description, and to mean the name under which defendant, Wm. George McCloskey, has chosen to have himself designated, by an act of incorporation, as the Rt. Rev. Wm. George McCloskey, Roman Catholic Bishop of Louisville.

The words used by the testatrix in making his devise over are: "To the Roman Catholic Bishop *of the city* of Louisville," thus interpolating into the corporate name of the bishop the words *of the city*. These words, however, do not in anywise make doubtful or uncertain the object of testatrix's bounty. Such minor inaccuracies have often been held by this court

as immaterial. (See Cromie's heirs v. Louisville Orphan Home Society, 3 Bush, 365.)

Neither is there any uncertainty as to the object or purpose for which she makes this residuary devise, "to be held by him (the Roman Catholic Bishop of Louisville) for the use of the Roman Catholic charitable institutions in this diocese."

Often in this court terms far more latitudinous and general have been held sufficient designations of the objects of a testator's bounty to uphold and sustain devises. (Kinney v. Kinney's ex'or, 86 Ky., 610; Attorney General v. Wallace, 7 B. Mon., 612; Ford v. Ford's ex'or, 91 Ky., 572; Givens v. Shouse, 5 Ky. Law Rep., 419.)

The court below sustained a demurrer filed by the defendants (Wm. George McCloskey being one of them) to the petition of plaintiffs.

The judgment is affirmed.